UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SFS CHECK, LLC,

          Plaintiff,          CIV. NO. 12-14607

      v.                   HON. TERRENCE G. BERG
                           HON. R. STEVEN WHALEN

FIRST BANK OF DELAWARE,
ET AL.,

          Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR LEAVE TO AMEND (DKT. 45) AND DISMISSING CASE**

      SFS Check, LLC ("Plaintiff" or "SFS") brings this action against First Bank of Delaware ("Defendant" or "FBD") and nine of FBD's directors and officers (the "Individual Defendants") for negligence and fraud.   Plaintiff now seeks leave to file a Second Amended Complaint; Defendant has responded, arguing that granting Plaintiff leave to file its proposed Second Amended Complaint would be futile, since that pleading fails to state a claim upon which relief can be granted.   For the reasons set out below, Plaintiff's motion for leave to amend will be denied, and this case will be dismissed.

Plaintiff is a Michigan company that purportedly provides financial transaction processing services.  In the proposed Second Amended Complaint, Plaintiff alleges that someone unlawfully opened a bank account in Plaintiff's name at FBD and used this fraudulent bank account to process illegal internet gambling transactions.  As a consequence, Plaintiff claims, its own bank, non-party Fifth Third Bank, refused to continue to process SFS's transactions, effectively putting Plaintiff out of business.  Plaintiff was also served with, and forced to respond to, a Federal Grand Jury Subpoena, issued by this Court, pertaining to transactions processed through the fraudulent account at FBD associated with SFS.  Plaintiff therefore seeks $ 6,000,000 in damages for negligence and $4,000,000 for fraud.

By way of procedural background, Plaintiff's First Amended Complaint (Dkt. 8) also asserted two common law claims against Defendants – negligence and fraud.[1]  The case is before this Court by virtue of diversity jurisdiction.  Defendants' moved to dismiss the First

---

[1] Plaintiff's negligence claim (Count I) contained four sub-parts, three involving the alleged conduct or omissions of FBD and one for the alleged gross negligence of the Individual Defendants. The negligence claims against FBD include: (1) failure to "Exercise Due Care and Sound Reasonable Business Judgment;" (2) failure to "Exercise Due Diligence;" and (3) "Respondent [sic] Superior" for failing to "Supervise its Employees."

Amended Complaint (Dkt. 34), Plaintiff responded (Dkt. 41), and the

Court heard argument on Defendants' motion to dismiss on May 29,

2013. Defendants' motion argued that Plaintiff's case should be

dismissed for two reasons: first, as to the Individual Defendants, this

Court did not have personal jurisdiction over them; second, as to all

Defendants, Plaintiff's First Amended Complaint failed to state a claim

upon which relief can be granted.

The Court denied Defendants' motion to dismiss, and authorized

Plaintiff to conduct limited discovery, targeted to the question of

whether there was personal jurisdiction over the Individual Defendants.

After this limited discovery period, Plaintiff was directed to file a

motion for leave to file a Second Amended Complaint (with a proposed

Second Amended Complaint attached – *see* E.D. Mich. LR 15.1), which

Plaintiff has now done (Dkt. 45). Defendants responded (Dkt. 46) to

Plaintiff's motion for leave to amend, and the Court held oral argument

on Plaintiff's motion on October 2, 2013.

For the reasons set forth below, the Court finds that there is no

personal jurisdiction over any of the Individual Defendants; therefore

these claims are **DISMISSED WITHOUT PREJUDICE**.

Furthermore, Plaintiff's proposed Second Amended Complaint fails to state a claim upon which relief can be granted against FBD, therefore these claims are **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

The following facts are taken from Plaintiff's proposed Second Amended Complaint which, for purposes of this motion, are assumed to be true and are viewed in a light most favorable to Plaintiff.

Plaintiff alleges that it entered into automated clearing house ("ACH") agreements to process electronic fund transfers on behalf of several non-party entities (Dkt. 45 ¶ 17).  Plaintiff further avers that, after it began processing transactions for these entities, Plaintiff received notice on or about July 30, 2010 from its own bank – non-party Fifth Third Bank – that it would no longer process Plaintiff's ACH transactions and was terminating its relationship with Plaintiff (Dkt. 45 ¶ 25 [stating that Plaintiff received notice on August 2, 2010]; Ex. 2, Aff. of Charles Kopko ¶ 2 [stating that Plaintiff received notice on July 30, 2010]).[2]  Fifth Third Bank's expressed basis for terminating the

---

[2]     Although not attached to the Complaint, in Plaintiff's Response to Defendant's Motion to Dismiss the First Amended Complaint (Dkt. 41), Plaintiff attached Exhibit I, which is an e-mail to Charles Kopko of SFS, dated July 30, 2010 at 3:23 p.m. from Douglas M. Sammons of Fifth Third Bank.  This e-mail states in

relationship was that Plaintiff maintained an account at FBD that was apparently processing illegal gambling transactions (Dkt. 45 ¶¶ 20, 24-26; Ex. 1, Aff. of Douglas Sammons, VP of Fifth Third Bank).

In an Affidavit attached to the proposed Second Amended Complaint, Plaintiff's President Charles Kopko states that, after learning of an alleged FBD account in Plaintiff's name from Fifth Third Bank, he contacted FBD on August 2, 2010 (Dkt. 45 ¶ 27-29; Ex. 2 ¶ 4). Mr. Kopko states that he was informed by Defendant Bastable, who was FBD's Vice President for E-Payments, and unidentified "agents" and "members of [FBD's] corporate offices" that there was no "SFS" account at FBD (Dkt. 45; Ex. 2 ¶ 4).

Two months later, in October 2010, Plaintiff allegedly received a Grand Jury Subpoena, issued by this Court; the Subpoena commanded production of documents relating to an account "that involved SFS at

---

its entirety: "Effective 08/02/10, we will no longer be sponsoring you into MasterCard RPPS and no longer allow you to process ACH transactions through 5/3. Our AML has informed me that you are processing with another bank (FNB of Delaware) who is processing gaming transactions that are hitting 5/3 accounts." Based on the Court's review of the record in this case, it appears that "AML" refers to Fifth Third Bank's Anti-Money Laundering program.

5

FBD."[3]  (Dkt. 45 ¶ 30).  Upon receiving this Subpoena, Mr. Kopko states

that he contacted "the office of the [FBD] Bank President" and later

received a return phone call from Defendant Bastable, who allegedly

told Mr. Kopko that FBD "had opened an account for SFS and, in fact,

SFS Novi of Michigan was a customer and they had been processing

ACH transactions through this account" (Dkt. 45 ¶¶ 31-32; Ex. 2 ¶ 7).

Mr. Kopko states that he then told Defendant Bastable that he "was

going to report this action to the [FBD] Board of Directors," to which

Mr. Kopko was allegedly told that the FBD Board of Directors was

"already aware of it" (Dkt. 45 ¶ 34; Ex. 2 ¶ 8).  Plaintiff further alleges

that Defendant Bastable then stated that she could not discuss the

account with Plaintiff further, because Plaintiff was not a signatory on

the account (Dkt. 45 ¶ 33).[4]

---

[3]     The Grand Jury Subpoena, attached as Exhibit B to Plaintiff's Opposition to
Defendants' Motion to Dismiss First Amended Complaint (Dkt. 41-3), does not
include the attachment referenced on the face of the subpoena that would have
described the documents and items being commanded to be produced.  Without that
attachment, it is impossible to tell precisely what records, or to what bank account,
the Grand Jury subpoena was directed.

[4]   In a separate civil action before another Judge of this Court, Plaintiff SFS and
Charles Kopko were defendants.  *See MAS, Inc. v. NoCheck*, *LLC et al.*, E.D. Mich.
Case No. 10-13147 (Murphy, J.).  In that lawsuit, SFS, represented by the same
counsel who represents SFS in this matter, filed pleadings alleging that another
company, MAS, Inc (the plaintiff in the prior lawsuit) had "processed illegal
gambling transactions through the First Bank of Delaware using SFS [sic] name

Plaintiff alleges in the proposed Second Amended Complaint that Defendants acted negligently in creating the account in Plaintiff's name, engaged in fraud in their communications with Plaintiff subsequent to the creation of the account and, as a result, caused Plaintiff to incur damages totaling approximately $10 million (Dkt. 45).

---

and tax identification number" (No. 10-13147, Dkt. 25, ¶ 84).   In another pleading in that matter, Plaintiff Charles Kopko, then proceeding in pro per, stated in a response to a motion for summary judgment that MAS had fraudulently opened an account at First Bank of Delaware in SFS's name, and that "[a]fter calling [FBD] for the second time the name on the account was changed to MAS" (No. 10-13147, Dkt. 123 at 16).  At this stage of these proceedings, the Court will only consider the allegations in the Complaint and any incorporated exhibits, but notes that these material and relevant facts were not included in any of Plaintiff's pleadings in this case, or the Affidavit of Mr. Kopko. If Plaintiff believed as of November 2010, when Mr. Kopko filed that motion in the previous case (and only one month after receiving the Grand Jury subpoena), that MAS, Inc., fraudulently opened the FBD account using the name of SFS, it is unclear why these relevant facts were not included in the allegations in this matter.  Reading the allegations in this case, one is clearly left with the impression that Plaintiff did not know how an account at FBD was opened in its name.  Moreover, the omission of this information seems calculated to increase the chances that one might hold FBD, rather than MAS, Inc., responsible for causing damages to Plaintiff.  To these circumstances, the Court adds the following representations made by counsel at oral argument.  During oral argument, counsel for Plaintiff conceded that after reviewing thousands of records from FBD during discovery, it found no evidence of any account at FBD in the name of SFS (Tr. October 2, 2013 at 3-4, 27). Counsel for FBD explained that FBD records showed that "MAS opened an account at the First Bank of Delaware" (Tr. October 2, 2013 at 31) and that "somehow MAS designated a name on the account of the account holder as SFS, like in a reference line or E-line.  Why they did that, I can't – I have no idea." *Id*. at 32.  Although the ruling on this motion is based only on the Complaint and any incorporated exhibits, the Court reminds Plaintiff's counsel that the truth-finding function of the administration of justice in civil actions is not well served by the omission of such relevant and material information.

## II.  ANALYSIS

### A.    *Motion to Dismiss for Lack of Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant.  *See Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002); *see also Children's Legal Services, PLLC v. Shor Levin and Derita, PC,* 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012).  In ruling upon a motion to dismiss for lack of personal jurisdiction, the district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).  An evidentiary hearing may be conducted "if the district court concludes

8

that the written submissions have raised issues of credibility or disputed issues of fact which require resolution," in which case the plaintiff would be required to "show by a preponderance of the evidence that jurisdiction exists." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1998).

However, where the district court finds no need for an evidentiary hearing, "the burden of the plaintiff is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (internal quotations and citations omitted)); *see also Nationwide Mutual Insurance Co. v. Tryg Int'l Insurance Co.***,** 91 F.3d 790, 792-93 (6th Cir. 1996) (quoting with approval *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 987 (6th Cir. 1992) (Boggs, J., dissenting) ("[A] showing by a preponderance of the evidence is not necessary unless the trial court conducts an evidentiary hearing.")); *Neogen Corp.*, 282 F.3d at 887.

Likewise, where a "district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an

evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff," and in order to "'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts,'" the court "'**does not weigh** the controverting assertions of the party seeking dismissal.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996) (emphasis in original) (quoting *Theunissen*, 935 F.2d at 1459). "Dismissal in this procedural posture is proper only if all the specific facts which [the plaintiff] alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.*

## B.   The Individual Defendants are Not Subject to the Personal Jurisdiction of this Court

In a diversity case, as here, personal jurisdiction over a defendant is proper only if it comports with the requirements of the state long-arm statute and federal constitutional due process. *See Children's Legal Servs.*, 850 F. Supp. 2d at 679 (E.D. Mich. 2012); *see also* MCL §§ 600.701, 600.705. The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."

*Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 477 (6th Cir. 2003)). "The Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Audi AG and Volkswagen of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004). In Michigan, personal jurisdiction over individuals may be general, *see* MCL § 600.701, or limited, *see* MCL § 600.705.

General jurisdiction exists independently from the facts of the action and may be found where the defendant is present in the state at the time process is served, consents to the state's jurisdiction, or is domiciled in the state. *See* MCL§ 600.701. The Individual Defendants were not present in Michigan at the time of service of the Summons in this action, have not consented to the jurisdiction of this Court, and are not domiciled in Michigan (Dkt. 46; Exs. G-O, Decls. of Individual Defendants). Accordingly, Plaintiff has alleged no basis for the Court's assertion of general personal jurisdiction over any of the Individual Defendants.

The exercise of limited personal jurisdiction over an out-of-state

defendant is proper where the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); accord *Theunissen v. Matthews,* 935 F.2d 1454, 1459-61 (6th Cir. 1991).  Minimum-contacts are satisfied where a defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  "'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)).  The defendant's conduct must be such that he should reasonably anticipate being haled into court.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

Under Michigan law, limited personal jurisdiction may be exercised over an individual if, for example, he or she (a) transacts any

business within the state, (b) does or causes an act to be done, or consequences to occur, in the state, (c) or owns, uses, or possesses real or tangible personal property in the state. *See* MCL § 600.705. "[J]urisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation.*" Flagstar Bank, FSB v. Centerpointe Fin., Inc*., 10-14234, 2011 WL 2111984 *3 (E.D. Mich. May 26, 2011) (quoting *Balance Dynamics Corp. v. Schmitt Indus*., 204 F.3d 683, 698 (6th Cir. 2000)).  The fact that a corporation does business in Michigan, without more, is insufficient for a court to assert personal jurisdiction over the directors and officers of that corporation.  *See id*.  Further, the fact that an agent of a company has an ownership interest or otherwise exercises control over the company is not a sufficient basis on which to assert limited personal jurisdiction over that individual in another state in which the company does business.  *See Lown Cos., LLC v. Piggy Paint, LLC*, 11-911, 2012 WL 3277188 *3 (W.D. Mich. Aug. 9, 2012).

Plaintiff has not pled sufficient facts to subject the Individual Defendants to this Court's jurisdiction.  The proposed Second Amended Complaint alleges no specific facts demonstrating that the Individual

Defendants purposely availed themselves of the privilege of acting in Michigan.  Plaintiff avers only that the Court has jurisdiction by virtue of the fact that the Individual Defendants are "executives" of FBD (Dkt. 45 ¶ 16).  The Court granted Plaintiff a period a limited discovery to gather evidence on the question of the Individual Defendants' connections to this forum.  Despite having had such discovery from Defendants, Plaintiff fails to offer any new, or materially different evidence relating to personal jurisdiction, beyond the facts alleged in the original Complaint (Dkt. 1).

The proposed Second Amended Complaint further alleges that: (1) the Individual Defendants were collectively negligent in failing to prevent FBD from permitting the opening of a fraudulent account in Plaintiff's name at FBD; (2) each of the Individual Defendants had the responsibility to manage and provide oversight of FBD; (3) Defendants Madonna, Silverman, Wildstein, Price, Marshall, Primus, Vandercook, and Mignogna failed to prevent FBD's misrepresentation of the existence of that alleged account; and (4) Defendant Bastable allegedly misrepresented the existence of the account in Plaintiff's name at FBD. Plaintiff does not allege that any of these omissions or acts occurred in

14

Michigan or that Defendant Bastable – or any of the other Individual Defendants – had any knowledge that Plaintiff was even located in Michigan.

Plaintiff has not alleged facts to establish that Defendants Madonna, Silverman, Wildstein, Price, Marshall, Primus, Vandercook, and Mignogna ever had *any* contacts with Michigan, much less contacts sufficient to allow the assertion of limited personal jurisdiction over any of them in this matter.[5] Plaintiff's specific allegation that Defendant Bastable misrepresented the existence of the account in SFS's name involved a single telephone call on August 2, 2010, from Plaintiff to FBD, made from an unknown location, and received in Delaware or Pennsylvania. Plaintiff also alleges that Defendant Bastable later returned another call made by Mr. Kopko to FBD, during which she corrected that alleged misrepresentation. It has been held, however, that telephone calls are insufficient to establish limited personal jurisdiction over an out-of-state defendant, especially when those telephone calls were made by a corporate officer acting in his or her

---

[5]     At oral argument, the Court questioned Plaintiff's counsel as to whether any evidence had been uncovered during the limited discovery period that connected any of these Individual Defendants to Michigan and counsel conceded that there was none (October 2, 2013 Tr. At 14-15).

official capacity. *See Keeley v. Airgas, Inc.*, 08-111, 2008 WL 5422691 (W.D. Mich. Dec. 29, 2008) (citing *Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439 (Mich. 1987)); *AM Diagnostics, Inc. v. Denney*, 810 F. Supp. 887, 895-96 (E.D. Mich. 1993); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 931 (6th Cir. 1974) (finding no personal jurisdiction over officers of out-of-state corporation, and holding that "[i]f such suits against officers of national corporations were ever permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer who claims that they constitute misrepresentations").

More recently, in *Balance Dynamics Corp. v. Schmitt Indus. Inc.*, the Sixth Circuit clarified its holding in *Weller*, and its position on the "fiduciary shield doctrine," by expressing agreement with courts that exercised personal jurisdiction over corporate officers where the officers were personal, active participants in allegedly tortious or violative conduct. *See* 204 F.3d 683, 697–98 (6th Cir. 2000). In *Balance Dynamics*, the Sixth Circuit explained that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional

16

notions of fair play and substantial justice; i.e. whether she purposefully availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id.*

Plaintiff's allegations concerning Defendant Bastable are insufficient to permit the Court to assert limited personal jurisdiction over her. The only arguable connections that Defendant Bastable had to Michigan were two telephone calls – one on August 2, 2010 from Mr. Kopko (originating from an unknown location, perhaps in Michigan, but perhaps not – Plaintiff does not specify) to FBD, wherein Defendant Bastable allegedly misrepresented the existence of an SFS account at FBD (Dkt. 45 ¶ 28), and a second in October 2010, wherein Defendant Bastable returned a call from Mr. Kopko and allegedly "acknowledged" that there was an SFS account at FBD (Dkt. 45 ¶ 32). There is no allegation, or evidence presented to the Court, that Defendant Bastable knew that she was talking on the telephone to individuals in Michigan. Furthermore, Plaintiff has not established that these two alleged telephone calls constitute Defendant Bastable's "active participation" in the allegedly tortious conduct. The conduct alleged does not demonstrate that Defendant Bastable had a substantial connection to

Michigan, such that traditional notions of fair play and substantial justice would lead her to believe that she might be haled into court in Michigan or that she purposefully availed herself of this forum. Accordingly, the Court finds that there is no personal jurisdiction over any of the Individual Defendants, and Plaintiff's claims against them are dismissed without prejudice.

### C. Standard for Motion for Leave to Amend

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, amendments should not be permitted in instances of "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "The test for futility ... does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule

12(b)(6) Motion to Dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

"Rule 12(b)(6)…allow(s) a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).

"To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, (2007).  Plausibility requires showing more than the "sheer possibility" of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009*)." Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327,

335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36. If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335–36).

### D.   *Plaintiff's Proposed Second Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Against FBD*

The proposed Second Amended Complaint raises two claims: (1) negligence; and (2) fraud. Neither states a claim upon which relief can be granted.

### i) Negligence

Plaintiff's negligence claim (Count I) contains four parts, three involving the alleged conduct or omissions of FBD, and one for the alleged gross negligence of the Individual Defendants. As stated earlier, the Court has no personal jurisdiction over the Individual Defendants, thus the discussion below will focus on the alleged negligence of FBD. The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown v. Brown*, 478 Mich. 545, 552 (2007). Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito v. Monroe*, 273 Mich. App. 416, 419 (2006). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v. Union–Commerce Assoc.*, 470 Mich. 460, 463 (2004). Absent a legal duty, there is no liability. *See Beaty v. Hertzberg & Golden, PC*, 456 Mich. 247, 262 (1997) ("It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff"). "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the

22

injured person." *Moning v. Alfono*, 400 Mich. 425, 438–39 (1977). This relationship must be one that "the law or society views as sufficiently strong" to require action or prohibit inaction by another. *Rakowski v. Sarb*, 269 Mich. App. 619, 631 (2006) (quoting *Samson v. Saginaw Professional Bldg., Inc.*, 393 Mich. 393, 406 (1975)). Duties may be created by statute, ordinance, contract, common law, or public policy. Under Michigan law, the existence of a general duty is a question to be decided by the court. *See Simko v. Blake*, 448 Mich. 648, 655 (1995).

The paragraphs of the proposed Second Amended Complaint addressing FBD's alleged duty include: ¶ 59 (FBD "failed to comply with the minimum requirements set forth by [the Customer Identification Program] CIP by not verifying the identity of the principles [sic] of SFS prior to opening the account pursuant to 31 CFR 103.121(b)(1)"); ¶ 61 (FBD's failure to verify information violated 31 CFR 103.121(b)(2)(ii)); ¶ 65 (SFS was never asked for information for the account in violation of 31 CFR 103.121(b)(2)(1)); ¶ 68 (FBD "had knowledge of its failure to institute an adequate CIP and safe and sound banking policies and procedures); and ¶ 80 (FBD "failed to implement proper procedures as required by CIP of the Bank Secrecy Act.").

These allegations do not contain facts showing that FBD owed Plaintiff a legal duty sufficient to give rise to a negligence claim.  As for the federal statute and regulations cited by Plaintiff in the proposed Second Amended Complaint, "the Bank Secrecy Act does not create a private right of action." *Nouri v. TCF Bank*, 10-12436, 2011 WL 836764 *6 (E.D. Mich. Mar. 9, 2011) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004)); *see also El Camino Resources, Ltd. v. Huntington Nat'l. Bank*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010); *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3rd Cir. 2006) (a "claim under the Bank Secrecy Act, 31 U.S.C. § 5318, does not authorize a private cause of action against a financial institution or its employees").  Therefore, under any theory of negligence predicated on CIP or Bank Secrecy Act compliance, monitoring, or implementation – whether pleaded as a failure to exercise due care, a failure to exercise due diligence, a failure to supervise  employees, respondeat superior, or gross negligence – the law does not provide a basis for imposing a duty of care owed by FBD to Plaintiff.

The Court must next consider if some general duty exists sufficient to give rise to a negligence claim.  The essence of the

24

Plaintiff's negligence claim is that FBD carelessly allowed an account to be opened at FBD in Plaintiff's name. Plaintiff has alleged that "Fifth Third indicated the reason for the termination was that **SFS had an account with FBD** and that SFS was processing illegal gambling transactions with some of (sic) Fifth Third customer accounts" (Dkt. 45, Ex. 1 ¶ 26) (emphasis added). However, as discussed in greater detail below, the factual allegations of the proposed Second Amended Complaint – and the attachments thereto – do not support the allegation that SFS actually had an account at FBD that created a customer relationship. "[T]he general rule that the court must accept as true all allegations in the complaint 'is inapplicable to legal conclusions,'" which "means that conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations 'do not suffice.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Plaintiff alleges that it was in fact a "customer" of FBD – albeit due to a customer relationship that allegedly was fraudulently-created,

without Plaintiff's knowledge – and that its negligence claim is based upon an alleged duty owed by FBD to Plaintiff as its customer.  Plaintiff relies on *Patrick v. Union State Bank*, 681 So. 2d 1364 (Ala. 1996), which held that a bank owes a duty of reasonable care to the person in whose name an account is opened to ensure the person opening the account is not an imposter.  *Id.* at 1371.  However, this case does not support the existence of any duty owed by FBD to Plaintiff.

First, *Patrick* addressed a question of Alabama state law and is not binding upon this Court.  Second, *Patrick* "has met with near universal disapproval," including in multiple subsequent decisions by the Alabama Supreme Court. *See Smith v. Amsouth Bank, Inc.,* 892 So.2d 905 (Ala. 2004); *Brunson v. Affinity Federal Credit Union*, 972 A.2d 1112, 1123-24 (N.J. 2009) (providing a lengthy summary of cases rejecting or distinguishing *Patrick*); *Greer v. Honda Mfg. of Ala., LLC*, 280 Fed. Appx. 808, 813 (11th Cir. 2008) (limiting *Patrick* to question of foreseeable harm); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002) (citing *Patrick* only as supporting proposition contrary to main proposition)   This Court declines to follow the holding of *Patrick*.

Moreover, the allegations in the proposed Second Amended Complaint and the attachments thereto, do not raise a plausible claim that Plaintiff was in fact a customer of FBD.  The proposed Second Amended Complaint itself alleges that Plaintiff did not intend to establish, or have any knowledge of, any account in its name with FBD. The proposed Second Amended Complaint alleges that Plaintiff learned of an account at FBD in SFS's name from two sources:  Fifth Third Bank and FBD Vice President Sian Bastable.  As to Fifth Third Bank, Plaintiff relies upon the affidavit of Fifth Third Vice President Douglas Sammons, attached to the proposed Second Amended Complaint, to support its allegation that a fraudulent account existed at FBD in Plaintiff's name (Dkt. 45, Ex. 1 ¶ 26).  However, Sammons' affidavit does not state that an account existed at FBD in the name of SFS. Since this affidavit is central to Plaintiff's contention that a fraudulent account was opened at FBD in Plaintiff's name, the entire affidavit bears quoting:

Douglas Sammons, being first duly sworn., deposes and says:

1.  During the year of 2010, I was employed by Fifth Third Bank as a Vice President.

27

2.  In addition to my duties as a Vice President of the bank. I also was the Relationship Manager (RM) for SFS Check, LLC which was located in Novi, Michigan.

3.  While during the exercise of my duties as the RM for SFS Check, I became aware that First Bank of Delaware (FBD) was engaged in the processing of ACH payments through the account of SFS Check.

4.  After our investigation, it was determined the ACH transactions being processed through the account of SFS Check at Fifth Third Bank were illegal internet gambling transactions.

5.  After having made this discovery, on or about July 2010, I sent an email to SFS Check informing them, effective August, 2010, Fifth Third Bank will no longer be sponsoring SFS Check into MasterCard RPPS.

6.  I also informed SFS Check that Fifth Third Bank will no longer allow them to process ACH transactions through the Fifth Third accounts.

7.  I further state that our Anti-Money Laundering (AML) at Fifth Third Bank had informed me that SFS Check was processing with another Bank (First Bank of Delaware) and they were processing gambling transactions that were hitting the Fifth Third accounts.

8.  I further state, I did receive a response back from SFS stating it was not them and it must be some kind of mistake.

9.  I responded to SFS's email concerning the mistake by stating according to our investigation, SFS Check's name is appearing on the ACH transactions originated by FBD.

10.  I further stated to SFS that our AML area will not support any transactions that one of our customers is involved in whether they know it or not.

28

11. On or about August, 2010 doing the exercise of my duties as Fifth Third Bank's Vice President and RM for SFS Check I informed SFS that Fifth Third Bank had decided that it would no longer be processing for their company.

12. I informed SFS that Fifth Third Bank would be notifying MasterCard RPPS that it would no longer be sponsoring their company, effective August, 2010.

13. I also informed SFS Check that we, Fifth Third Bank, will also be turning off their capability to initiate ACH transactions through Fifth Third's accounts effective August, 2010.

14. I further informed SFS Check that this was a firm decision by us, Fifth Third Bank, and we would not be making any adjustments to this plan as a result of the illegal gambling transactions and their processing with FBD bank.

15.     I further state that Fifth Third Bank did close SFS Check (sic), account as a result of the activities stated above. (Dkt. 45, Ex. 3).

Sammons clearly states that the ACH transactions were being processed through Plaintiff's account *at Fifth Third Bank* (Dkt.45, Exh. 1, ¶ 3).  It does not say (contrary to what Plaintiff alleges in ¶ 26 of the proposed Second Amended Complaint; Dkt. 45) that Fifth Third "indicated the reason for the termination was that SFS had an account with FBD and SFS was processing illegal gambling transactions . . ." Sammons' affidavit is consistent with Plaintiff's allegations elsewhere

in the proposed Second Amended Complaint:  "[a]fter an investigation SFS discovered that Defendant FBD was processing ACH transactions through its SFS account held at Fifth Third Bank") (Dkt. 45 ¶ 24).  The proposed Second Amended Complaint does not make any plausible claim that Plaintiff learned from Fifth Third Bank that there was "an account in Plaintiff's name" at FBD because the affidavit attached to the proposed Second Amended Complaint from Fifth Third Bank contradicts this claim.

The proposed Second Amended Complaint also states that Plaintiff later learned from FBD Vice President Sian Bastable, who had earlier told Plaintiff that there were no records showing any account in SFS's name, that in fact "they had opened and did have an SFS account at FBD" but that no information could be provided because Plaintiff was not a signatory on the account (Dkt. 45  ¶ 32, 33).  These allegations, taken as true, do not plausibly allege that SFS was in fact a customer of FBD to whom FBD owed a duty.  If anything, they allege that SFS learned that an apparently fraudulent account had been opened by someone using SFS's name.  SFS was not in fact a customer of FBD and had never established an account at FBD.  The allegations in the

30

proposed Second Amended Complaint claim that an account was established at FBD in SFS's name either by fraud or mistake, but that is not the same as saying that Plaintiff was a customer of FBD; indeed, it is saying the contrary:  the real SFS was never a customer of FBD and never established an account with FBD.  Because Plaintiff has failed to adequately allege that it was a customer of FBD, it has not made a plausible claim that FBD owed a duty to Plaintiff sufficient to support a claim of negligence.

Since Plaintiff has not adequately alleged that it was ever a customer of FBD, it has not presented a viable negligence claim.  A bank's duty flows to its customers, and not third parties such as SFS. *See Fremont Reorganizing Group v. Duke*, 811 F. Supp. 2d 1323, 1345 (E.D. Mich. 2011) citing *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 907 (W.D. Mich. 2010) ("Michigan law, in accord with the universal rule in this country, holds that a bank's relationship is with its customer and that the bank owes third parties no duty of care to monitor a customer's activities").

Accordingly, because Plaintiff has failed to allege that FBD breached a legally cognizable duty, its negligence against FBD fails to state a claim upon which relief can be granted, and is dismissed.

### ii) Fraud

As to Plaintiff's proposed fraud claim, Plaintiff must plead specific facts which support each element of fraud. To assert a claim of fraud under Michigan law:

> The general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976); *see also, Gen. Ret. Sys. of Detroit. v. Onyx Capital Advisors, LLC*, 10-11941, 2011 WL 4528304 *9 (E.D. Mich. Sept. 29, 2011).

Plaintiff's fraud claim is based on the allegation that, on August 2, 2010, Defendant Bastable allegedly told Plaintiff that there was no account of SFS at FBD (Dkt. 45 ¶¶ 27-29). As discussed above, Plaintiff

32

alleges that this statement (that there was no SFS account at FDB) was false.  (Dkt. 45 ¶¶ 107-110).  Plaintiff alleges that it "did, in fact, rely on these representations and did so to its detriment" (Dkt. 45 ¶ 111) and, as a result, sustained "enormous damages" (Dkt. 45 ¶ 224).

However, according to the facts alleged, Fifth Third Bank terminated its relationship with Plaintiff effective August 2, 2010. Fifth Third Bank took this action independently of FBD's allegedly false statement denying the existence of any SFS account at FBD (Dkt. 45 ¶¶ 25-29; Ex. 1).  According to Fifth Third Bank, it notified Plaintiff of its decision to terminate their relationship "in July 2010" (Dkt. 45; Ex. 1 ¶ 5); the alleged misrepresentation from Defendant Bastable allegedly occurred on August 2, 2010 (Dkt. 45 ¶ 108) – after Fifth Third Bank had decided to terminate its relationship with SFS.  Accordingly, the event that caused SFS's purported damages – the termination of its banking activities with Fifth Third Bank and the unidentified lost business opportunities flowing from that termination – happened before FBD made any allegedly false statement to Plaintiff.[6]

---

[6]     At oral argument, the Court asked:

    THE COURT:    Hadn't they – hadn't the harm occurred from the
                        closing of the Fifth Third Bank account and didn't

Although the proposed Second Amended Complaint invokes the formulaic and conclusory language in ¶ 111: "SFS did, in fact, rely on these representations and did so to its detriment," the Complaint does not include any specific factual allegations showing that Plaintiff was harmed in any way as a result of relying upon FBD's statement that there was no SFS account at FBD.[7] It is clear that the false statement could not have caused Fifth Third Bank to sever ties with Plaintiff because that decision was made before the false statement was allegedly spoken. Thus, the proposed Second Amended Complaint thus fails to adequately allege the fifth and sixth elements of fraud, that: (5) [the] plaintiff acted in reliance upon [the alleged misrepresentation]; and (6) that [the plaintiff] thereby suffered injury."

---

|  | that occur before the allegedly false statement was made by Ms. Bastiable? |
|---|---|
| MR. BURKETT: | That is correct, Your Honor. But that's part of the harm that would occur. The harm was going to occur anyway because of what – what the Bank of Delaware was doing. |

Tr. October 3, 2013 at 23-24.

[7]     The Affidavit of Mr. Kopko also fails to specify how the allegedly false statement caused SFS any damages. Rather, it states that the fraudulent account opening itself, and the illegal activities run through that account, caused SFS to incur damages" (Dkt. 45; Ex. 2 ¶ 11).

34

Moreover, when deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, the court "need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Travis*, 2012 WL 3516548 *4 (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006)). "If a complaint fails to show facial plausibility allowing a court to infer that a defendant maliciously, intentionally, or knowingly committed fraud, then the claim should be dismissed." *Gen. Ret. Sys.*, 2011 WL 4528304, at *9. Plaintiff's fraud claim fails to satisfy the requirements of Rule 9(b). Indeed, the proposed Second Amended Complaint fails to plead fraud with sufficient particularity to allow an inference that the defendant maliciously, intentionally, or knowingly committed fraud.

Considering each of the elements that must be pled to make out a fraud allegation, the proposed Second Amended Complaint: (1) states that Defendant made a material representation; (2) that it was false; (3) does not state that when Bastable made the statement, she knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) does not state that the statement was made

35

with the intention that it should be acted upon by Plaintiff; (5) contains no allegations that Plaintiff acted in reliance upon the false statement; and (6) does not state that Plaintiff suffered injury as a result of relying on the false statement. The proposed Second Amended Complaint contains no facts detailing the intent of FBD in making this representation; the relationships between, and flow of money by and among, FBD, Plaintiff, and/or Fifth Third Bank in support of any alleged fraudulent scheme; how Fifth Third Bank customer accounts were implicated in FBD's alleged use of an account in Plaintiff's name; how FBD allegedly benefitted from its alleged misrepresentation to Plaintiff about the nonexistence of an account; how FBD's alleged misrepresentation regarding the nonexistence of an account caused any of Plaintiff's alleged damages; or how Plaintiff arrived at its claimed damages amount. In sum, the proposed Second Amended Complaint is completely devoid of the particularity required of fraud claims under Rule 9(b), and fails as a matter of law.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to amend (Dkt. 45) is **DENIED**. Specifically, the Court finds that there is

no personal jurisdiction over any of the Individual Defendants, therefore any claims against them are **DISMISSED WITHOUT PREJUDICE**.  The Court further finds that Plaintiff's proposed Second Amended Complaint fails to state a claim upon which relief can be granted against Defendant FBD, therefore Plaintiff's proposed amendment is futile and the claims asserted against Defendant FBD are **DISMISSED WITH PREJUDICE**.

> **IT IS SO ORDERED.**

> s/Terrence G. Berg
>
> TERRENCE G. BERG
> UNITED STATES DISTRICT JUDGE

Dated: December 30, 2013

## Certificate of Service

I hereby certify that this Order was electronically submitted on December 30, 2013, using the CM/ECF system, which will send notification to each party.

> s/A. Chubb
>
> Case Manager